553 So.2d 453 (1989)
STATE of Louisiana
v.
Rube E. ROGERS.
No. 89-K-0676.
Supreme Court of Louisiana.
December 11, 1989.
James A. Dukes, Office of Public Defender; for applicant.
Duncan S. Kemp, III, Dist. Atty., Clara E. Toombs, and Barbara A. Cole, Asst. Dist. Attys., for respondent.
PER CURIAM.
Defendant, Rube Rogers, was convicted by a jury of Possession of Marijuana With Intent to Distribute, La.R.S. 40:966, and sentenced to five years at hard labor. On appeal, the court of appeal affirmed his conviction and sentence. 540 So.2d 1155 (La.App. 1st Cir.1989). We granted certiorari. 545 So.2d 1044 (La.1989). Because we find that one of the defendant's assignments of error has merit, his conviction and sentence must be reversed and the case remanded to the trial court for further proceedings; thus, it is not necessary for us to consider the defendant's additional assignments of error.
In the early afternoon of January 9, 1984 Trooper Cade Blades obtained a warrant from a district judge to search the defendant's house in rural Tangipahoa Parish. Blades' application stated that he had been contacted on January 9 by a "proven reliable confidential informant" who told him that he had been in defendant's home "within the past 72 (seventy-two) hours and ha[d] seen a substance known to the informant to be marijuana." The judge signed the warrant at 1:37 p.m., and Blades, in the company of several other officers, arrived at defendant's house and began to search it at about 3:00 p.m. that day. In the defendant's bedroom, which was the first room on the left of the hallway leading to the back of the house, the officers found, in a dresser drawer, a large plastic ziplock bag containing five smaller plastic bags filled with marijuana. They found a cheap plastic postal scale in the same drawer. Elsewhere *454 in the house, the officers found two half-ounce deposits of marijuana and some marijuana seeds.
The defendant, Rube Rogers, took the stand in his own defense and denied that he had brought the marijuana into the house or that he had had any knowledge of its presence. He contended that the case against him had been contrived by Harold Stein, an acquaintance who visited him at his house on the evening before the day of the officers' search. Defendant testified that Stein appeared at his house on the evening of January 8, 1984 in search of money for a trip to New Orleans and offered him a bag of marijuana either for sale or as security for a loan. Rogers testified that he rejected Stein's offer after the two men talked briefly in his bedroom. At about noon the next day, January 9, 1984, defendant testified, Stein returned with his wife and Althea Bassemier and asked to have his battery checked. (Defendant owned and operated a battery business.) On this occasion, defendant said, Stein did not seek money or mention the marijuana, but he did accompany the defendant into his house to watch the noon weather report, and remained in the house after the defendant went back outside, staying briefly before leaving about 12:30 p.m. As for the two half-ounce quantities and the seeds, defendant testified that the bedroom in which some of the drugs and seeds were found belonged to his son, and that his son and friends were often there. Furthermore, he testified that he kept his house unlocked, and that a number of people often dropped by or stayed overnight before hunting on his land. He testified that if he had known drugs were present in the house, he would have insisted on their removal.
The defense called three witnesses whose testimony tended to corroborate defendant's theory that Stein had framed him. Mr. Hosea Salinas testified that he and several other people stayed at the defendant's house the night of January 8th in preparation for a hunting trip the next morning. Salinas testified that Harold Stein, whom he knew to be a drug dealer, came to the house that evening, carrying a large paper bag filled with several smaller bags of marijuana, and asked everyone there if he wanted to buy some marijuana; no one did, however. Salinas testified that defendant was in the kitchen when Stein acted as if he were leaving, and the door had made a sound as if he had; then, about five minutes later, Salinas noticed Stein leaving from the back of the house. When Salinas asked him why he was still there, Stein stuttered and said that he had been in the bathroom. Salinas testified that he didn't believe him, however, because he had not heard the toilet flush. Salinas further testified that Stein was still carrying the bag of marijuana but that it looked smaller than it did when he had come in.
Cynthia Bresman testified that she had gone to the defendant's house around 9 a.m. on the morning of January 9th to use the defendant's washer and dryer in exchange for cleaning his house. During her work she did not notice any marijuana or any evidence of marijuana having been used on the premises. Defendant came into the house about noon to watch the news. Harold Stein, his wife, and Althea Bassemier arrived around 11 or 11:30 a.m.; they were there for forty-five minutes to an hour, and could have wandered throughout the house, but she did not pay attention because she was busy with her cleaning job.
Mark White testified that he was at the defendant's home on January 9th around noon. Between noon and 12:25, he saw Stein, his wife, and Althea Bassemier enter defendant's house.
On the morning of the trial, immediately following the selection of the jury, the defendant's attorney moved for a recess based upon the absence of one of his principal witnesses. The defense witness, Althea Bassemier, had been hospitalized earlier that day on an emergency basis due to the fact that she had gone into labor prematurely. According to her physician, however, she would have been able to present her testimony within ten days. The trial court denied the motion for recess on the ground that the defendant had failed to show the materiality of the witness's *455 testimony and the necessity for her presence at trial. The Court of Appeal affirmed on the same basis.
A motion for a continuance or a recess based upon the absence of a witness must state facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial, facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred, and facts showing due diligence used in an effort to procure attendance of the witness. La.C.Cr.P. art. 709; State v. Jackson, 450 So.2d 621 (La.1984); State v. White, 389 So.2d 1300 (La.1980); State v. Bertrand, 381 So.2d 489 (La.1980); State v. Gordy, 380 So.2d 1347 (La.1980); State v. Hopkins, 351 So.2d 474 (La.1977); State v. Dickerson, 282 So.2d 456 (La.1973); State v. Bland, 253 La. 185, 217 So.2d 195 (1968); State v. McDonald, 155 La. 963, 99 So. 713 (1924); State v. Nathaniel, 52 La. Ann. 558, 26 So. 1008 (1899); State v. Thomas, 40 La.Ann. 151, 3 So. 589 (1888); State v. Egan, 37 La.Ann. 368 (1885); State v. Moultrie, 33 La.Ann. 1146 (1881).
It is not disputed that the defendant made the required showing of a probability that the witness would be available at a reasonable time to which the trial could have been deferred and that due diligence had been used to procure her attendance. The witness would have been available in ten days which would have constituted a short recess considering her emergency medical situation. The defendant's attorney had had a subpoena issued for the witness and moved for a recess as soon as he was notified of her hospitalization. Thus, the only real issue is whether the witness's testimony was material and her presence necessary.
In support of the motion for recess, the defendant's attorney alleged that the absent witness, Althea Bassemier, was expected to testify that on January 9, 1984, the day of the search and seizure, (i) she and Harold Stein visited Rube Rogers' house and went inside during Rube's absence, (ii) while they were inside she saw Harold Stein go into Rube's bedroom alone, (iii) she knew Harold had drugs in his possession that day because she used some of them with him, (iv) she did not see any drugs in Harold's possession at the moment he entered the bedroom but he had on a heavy coat at this time, (v) after they left the house Harold called the police about 1:30 p.m., (vi) she did not hear the substance of Harold's telephone conversation but from the circumstances and from her own conversations with him that day and prior thereto she concluded that he was in the process of "setting up Rube."
In our opinion the lower courts committed clearly prejudicial error in deciding that the facts to which the absent witness was expected to testify were not material. Evidence is material if the proposition which it tends to prove or disprove is a matter in issue. McCormick on Evidence § 185 (E. Cleary 3d ed. 1984), and authorities cited therein. The state, by prosecuting the defendant for knowingly or intentionally possessing with intent to distribute a controlled dangerous substance, had put at issue the propositions that he had knowingly or intentionally brought the marijuana into his house or allowed another to do so, that he knowingly or intentionally had allowed the drugs to remain, and that he was aware that the drugs in his house were of a marketable quantity. The facts to which the absent witness was expected to testify would have tended to disprove each of these propositions by tending to show that Harold Stein surreptitiously brought a large quantity of marijuana into the house without the defendant's knowledge and secreted it in the bedroom shortly before the police search and seizure.
Our trial and appellate brethren also fell into error by concluding that the defendant failed to show the necessity for the presence of the witness at trial. The requirement of La.C.Cr.P. art. 709 that the mover must show "the necessity for the presence of the witness at the trial" is simply another way of saying that he must show that the material "facts [to which the absent witness is expected to testify] can be proved by no witness in attendance upon *456 the court" as provided for by art. 709's precursor, La.R.S. 15:322. No substantive change in the statutory or jurisprudential law was intended by art. 709. See La.C. Cr.P. art. 709, Official Revision Comment. Although other witnesses could and did testify that Harold Stein was present at the defendant's house on the day in question, the absent witness, Althea Bassemier, was expected to testify to material facts that could be proved by no other witness in attendance, viz., that Harold Stein had gone into the defendant's bedroom alone, that he had drugs in his possession immediately prior to his visit to the house and its bedroom, and that he made a telephone call to the police shortly after leaving the house.
For the reasons assigned, the defendant's conviction and sentence are reversed and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED TO THE TRIAL COURT.