McCALEB and BARHAM, JJ., dissent from the refusal to grant a rehearing.

217 So.2d 195

**STATE of Louisiana**

v.

**Ernest George BLAND.**

No. 49228.

Dec. 16, 1968.

Rehearing Denied Jan. 20, 1969.

Philip S. Brooks, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant, Ernest George Bland, having been charged by information with armed robbery, in violation of Article 64 of the Criminal Code (R.S. 14:64),[1] is appealing from his conviction thereunder and sentence to serve forty years at hard labor in the state penitentiary, relying for the reversal thereof on certain alleged errors committed in the course of the trial, to which timely objections were made and proper Bills of Exceptions reserved.

The first alleged errors grew out of the judge's refusal to grant defendant a continuance. The record discloses that the defendant, apprehended November 9, 1967, was charged on November 16, 1967, by information and appeared for arraignment on December 5, 1967, without counsel, whereupon a plea of not guilty was entered in his behalf and he was given until December 8, 1967, to arrange for private counsel. On that day, when he advised the trial judge he was unable to employ counsel by reason of poverty, the court appointed an attorney to represent him, fixing January 22, 1968, as the day for the trial, but, at the request of the state, the date was changed to January 25, 1968. On the day of the trial defense attorney called the court's attention to a written motion for a continuance, filed the previous day, predicated on the ground defendant had contacted a William G. Fowler of Birmingham, Alabama, with regard to representing him. When this was denied, counsel orally requested a continuance because defendant had also contacted Jim Norton, an attorney of Houston, Texas, and expected to hear from him the next day; and, further, that there were two witnesses he felt were material to the case (Billy Garrett and Robert Nap of Houston, Texas),[2] whom he had been unable to con-

---

1. R.S. 14:64 provides: "Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." The penalty is not less than five and not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.

2. Although these witnesses were named in the oral motion and it was stated they were from Houston, Texas, in the bill it is asserted time was needed to subpoena two witnesses (whose names were not given) from Fort Worth, Texas.

tact as yet. In denying the continuance, the court made certain remarks which counsel contends were highly prejudicial and deprived the accused of a fair trial since they were made in the presence of prospective jurors, the petit jury venire then being present in the courtroom.

Counsel thereupon reserved the first bill, making a part thereof the written motion, the oral motion, and the remarks of the trial judge objected to. However, in perfecting his bill defendant did not include any reference to the denial of the oral motion—predicated on the need for sufficient time to hear from the Houston attorney and subpoena the witnesses in Houston—confining the bill strictly to the refusal of the written motion for continuance and the remarks of the trial judge asserted to be prejudicial.

The trial judge in his per curiam to this bill points out that "There was no showing in the motion that if the court continued the case that Mr. Fowler would represent the defendant. The request in the motion was that the matter be continued only for the purpose of allowing the attorney, William G. Fowler, to come to New Orleans and communicate with Ernest George Bland (the accused), and that there was nothing in the motion to indicate that Mr. Fowler would represent the defendant, and the attorney, Mr. Fowler, had not communicated with the court in any manner, shape or form whatsoever, nor was there any other communication presented to the court showing that Mr. Fowler would represent this defendant if the case was continued." Pointing out that defendant had from November 9, 1967, until January 25, 1968, to secure an attorney of his choice, and that the court had appointed an attorney to represent him upon his vow of poverty, which counsel was learned in the law and capable of handling the matter with dispatch, the motion for a continuance filed only the day before and called to the court's attention at the time of the trial "came too late and impressed the court that the defendant was trying to avoid trial and made no showing whatsoever that he could obtain an attorney of his own choosing if he were given the opportunity to do so."

■ We therefore conclude the trial judge properly overruled defendant's written motion for a continuance. Defendant's contention that his case was prejudiced by the remarks [3] made by the trial judge in

3. The remarks complained of are as follows: "I understand. He doesn't want to go to trial. I can say I want to subpoena the King of England. There's no King of England, but I could say I wanted to subpoena him. We must determine whether it's a serious proposition and if the witnesses could be available, we'll want to do something about it. This defendant is maneuvering by saying he has an attorney coming from out of state. He's charged with an offense committed on November 9, 1967, and he has been incarcerated since that time. He has had plenty of time to do anything he wanted to do in the case and he was brought

refusing the continuance also lacks substance.

▬ While it may be said that the language used by the trial judge in giving his reasons for refusing the continuance is not entirely consonant with a legalistic or juridical approach, the defendant has not shown in what manner he was prejudiced by the remarks. In the first place, there is nothing in the record to show the prospective jurors heard the remarks between counsel and the judge at the bench, while the jurors sat to the rear of the courtroom. In the second place, if counsel had any conviction that such remarks, if heard, were prejudicial, then it was his duty when examining the jurors on their voir dire to ascertain if they had heard the conversation, and, if so, to admonish them to probe their consciences to determine if the remarks had, in fact, prejudiced them. If it had, he should then have had them excused for cause. If any doubt existed about this, he should have challenged them peremptorily.

The next ruling alleged to be erroneous forms the basis for the last bill (No. 4), and was reserved when the trial judge refused defense motion for a new trial. This is also without merit.

In addition to the general allegations that the verdict is contrary to the law and the evidence, and the assertion the ends of justice would be best served by granting a new trial, the only other complaint in the motion itself deals with the purportedly prejudicial remarks made by the judge in refusing the continuance, which has just been decided adversely to this contention. However, in perfecting the bill itself, defense counsel reiterates the substance of the written motion for a continuance, also decided adversely to defendant's cause, and, in addition, asserts there was insufficient time to subpoena two out-of-state witnesses and a continuance should have been granted in order that they might be present and their testimony elicited.

In his per curiam to this bill the trial judge advises the only motion for a continuance made as required by the Code of Criminal Procedure "does not state that the defendant desired to subpoena any witnesses, either in the state or out of the state, and certainly does not comply with Article 709 of the Code of Criminal Procedure." [4]

into court and had no lawyer and he was given time to get a lawyer and we brought him back and then he told me he didn't have any money to hire a lawyer and I appointed you in the case and now on the date of trial he's coming up and saying he has witnesses and lawyers from Kansas City and New York and California coming into to try the case. This

man is in jail. He's not on bond and he's going to trial today."

4. Article 707 of the code provides that all applications for continuance "shall be by written motion alleging specifically the grounds upon which it is based." In addition, Article 709, dealing specifically with continuances predicated on the absence of witnesses, provides that the motion in

As pointed out hereinabove, while defendant in his oral motion for a continuance said, in part, this was to permit the subpoenaing of the two out-of-state witnesses, and included this in his objection to the judge's ruling denying the continuance, he did not make it a part of the bill when it was perfected, and the oral motion was not, therefore, given any consideration by the trial judge. Moreover, it is apt to observe that such oral motion was not properly executed as required by Article 709 of the Code of Criminal Procedure. The

oral motion was not in writing, and, in making it, defense counsel failed to disclose (1) the facts to which these witnesses were expected to testify, (2) the materiality of their testimony and the necessity for their presence at the trial, (3) the facts and circumstances showing a probability the witnesses would be available at the time to which the trial might be deferred, and (4) facts showing due diligence used in an effort to procure attendance of the witnesses.

For the reasons assigned, the conviction and sentence are affirmed.

writing must state: "(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial; (2) Facts and cir-

cumstances showing a probability that the witness will be available at the time to which the trial is deferred; and (3) Facts showing due diligence used in an effort to procure attendance of the witness."